**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**CASE NO. 08-61757 – CIV – MORENO/TORRES**

IN RE: THE PETITION OF MS "MADELEINE"
SCHIFFAHRTSGESELLSCHAFT mbH & CO.,
KG, REEDEREI ALNWICK HARMSTORF &
CO. GmbH & CO. KG AND BANGOR CASTLE
SHIPPING COMPANY LIMITED AS OWNER,
MANAGING    OWNER    AND    BAREBOAT
CHARTERER    RESPECTIVELY    OF    THE
VESSEL    M/V    "MADELEINE",    FOR
EXONERATION FROM OR LIMITATION OF
LIABILITY,

Petitioners

_____/

**<u>AMENDED CLAIM OF RESPONDENT JAMES CASON, JR., AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF JAMES CASON, DECEDENT, AND
ANSWER TO PETITIONER'S PETITION FOR EXONERATION FROM OR
LIMITATION OF LIABILITY</u>**
(*AMENDING CLAIMS ONLY*)

Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of

James Cason, decedent, brings this claim against Petitioners MS "Madeleine"

Schiffahrtsgesellschaft.mbH & Co., a foreign corporation; Reederei Alnwick Harmstorf & Co.

GMBH & Co. KG, a foreign corporation; and Bangor Castle Shipping Company LTD, alleging

as follows:

**<u>CLAIM</u>**

1.     This action concerns the May 20, 2008, wrongful death of James Cason that happened

while he was working as a longshoreman on board the general cargo container ship *M/S*

*Madeleine* in Port Everglades, Broward County, Florida.

2.    The claims asserted are governed by both general maritime law and/or Florida law, inclusive of the Florida's Wrongful Death Act §§ 768.16, *et. seq.*[1]

3.    Claimant/Respondent, James Cason, Jr., is the Personal Representative of the Estate of James Cason, Decedent.

4.    Claimant/Respondent brings this action on behalf of all potential beneficiaries of a recovery for the wrongful death of the Decedent, to wit:

a.    The Decedent's estate;

b.    Claimant/Respondent, who was born on August 15, 1986, and is the minor son of Decedent, as the term "minor" is defined as a matter of law;

c.    Juvasia Cason, who was born on May 12, 1988, and is the minor daughter of Decedent, as the term "minor" is defined as a matter of law;

d.    Jarvaris Cason, who was born on April 20, 1990, and is the minor son of Decedent, as the term "minor" is defined as a matter of law;

e.    Jaleceia Cason, who was born on June 2, 1991, and is the minor daughter of Decedent, as the term "minor" is defined as a matter of law;

f.    Justin Cason, who was born on June 12, 1992, and is the minor son of Decedent, as the term "minor" is defined as a matter of law;

---

[1] Some cases hold that 905(b) preempts any cause of action a Claimant/Respondent may pursue against a vessel owner or vessel *in rem* other than negligence actions under 905(b) and general maritime law. *See, e.g., Norfolk Shipbuilding & Drydock Corp. v. Garris*, 531 U.S. 811, 820 (U.S. 2001); *Hess v. Upper Mississippi Towing Corp*, 559 F.2d 1030 (5th Cir. 1977); *McLaurin v. Noble Drilling*, 529 F.3d 285, 289 (5th Cir. 2008); and *In Re Complaint of Donjon Marine Co.*, 2008 US Dist. LEXIS 59102 (SDNY July 30, 2008).  However, other cases suggest that Claimant/Respondents may also plead state wrongful death claims.  *See, e.g., Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 26 L. Ed. 2d 339 (1970); *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 133 L. Ed. 2d 578 (1995)("The Court...notably left in place [Moragne's] negligence claim...stated under Florida's law.").  Accordingly, Claimant/Respondent is pleading a Florida wrongful death claim, if only in an abundance of caution to preserve any available causes of action Claimant/Respondent may have.

5.     Claimant/Respondent and the surviving children of Decedent are all residing in, and are citizens of, Broward County, Florida.

6.     Petitioner MS "Madeleine" Schiffahrtsgesellschaft.mbH & Co. ("Schiffahrtsgesellschaft"), is a German corporation and owner of the *Madeleine*.

7.     Petitioner Reederei Alnwick Harmstorf & Co. GMBH & Co. KG ("Reederei"), is a German corporation and is the manager of the *Madeleine*.

8.     Petitioner Bangor Castle Shipping Company Ltd. ("Bangor"), is an Antigua and Barbuda corporation and was the charter of the *Madeleine*.

## FACTUAL ALLEGATIONS

9.     On or about May 19, 2008, overnight to on or about May 20, 2008, a large tank (commonly referred to in the industry and hereafter referred to as a "tanktainer") of liquefied gas was leaking aboard cargo hold one (1) onboard the *Madeleine*.

10.    On or about May 14, 2008, the tanktainer arrived at Port Everglades for shipment.

11.    From on or about May 19, 2008, overnight to on or about May 20, 2008, James Cason was working as a stevedore for Florida Transportation Services.  During the course and scope of his employment as a stevedore, James Cason was called to load the vessel *Madeleine*.

12.    On May 19, 2008, at around 7:20 p.m., the tanktainer was loaded onto the *Madeleine* in an enclosed cargo hold designated one (1).  This tanktainer was loaded in the bottom of the hold with other cargo containers and road construction machinery.

13.    The stevedores loaded the tank container and other cargoes in the Vessel according to the plan prepared by the Port Captain Alberto Parra, and approved by the vessel and/or Charterer.

3

14.     No damage or leaks were noted during the loading of the tanktainer.

15.     At or around 2 a.m., on May 20, 2008, the stevedores completed loading the first hold and commenced loading operations on hold two (2).

16.     At this time, cargo hold one (1) was turned over to the Vessel's crew who were responsible for lashing and/or securing the containers and machinery inside the hold.

17.     At or around 2:20 a.m., the vessel's crew notified the vessel's Second Mate that they were experiencing ill/dizziness while securing the load.

18.     Upon information and belief, the crew reported "smoke" in the hold.

19.     Upon information and belief, the vessel's First Mate notified the Port Captain, Alberto Parra of the crew's report.

20.     At or around 2:30 a.m., the Vessel's Port Captain notified Hayman Sooknanan that the tanktainer is leaking in hold one (1) and must be discharged.

21.     Unbeknownst to the stevedores, the ventilation system in cargo hold one (1) was defective and/or malfunctioning, rendering the system inoperable.

22.     Based upon the orders and/or instructions of the Port Captain, Hayman Sooknanan, went into the hold to investigate the tanktainer.  Tragically, Mr. Sooknanan was overcome by the argon gas and never made it out.

23.     In seeing that his co-worker, Mr. Sooknanan, did not emerge from the cargo hold, James Cason descended into the hold in an attempt to rescue Mr. Sooknanan.  Tragically, the hazardous gas also overcame Mr. Cason and he, too, never made it out of the cargo hold.

24.     Upon information and belief, on or about the same time Mr. Cason descended into the hold to render aid to Mr. Sooknanan, emergency rescue was called.

25.  Finally, seeing both Messrs. Sooknanan and Cason not return, Mr. Rene Robert Dutertre, Jr., descended into the hold attempting to rescue both men.  However, Mr. Dutertre was likewise overcome by the exposure to the argon gas and unable to make it out of the hold.

26.  All three men died as a result of asphyxiation from argon gas.

27.  Argon gas is a colorless, odorless, tasteless and nonirritating gas.  Humans possess no senses that can detect its presence.  However, argon gas is an asphyxiate.  Effects of oxygen deficiency resulting from asphyxiates include rapid breathing, diminished mental alertness, impaired muscular coordination, faulty judgment, depression of all sensations, fatigue.  As asphyxiation progresses, nausea, vomiting, prostration and loss of consciousness may result, eventually leading to convulsions, coma and death.

28.  The owner, charterer and/or manager of the *Madeleine* had an opportunity to inspect and repair the Vessel's ventilation/blower system for the cargo holds prior to loading the tank container filled with hazardous gas but they did not do so.

29.  Upon removing the tank from the cargo hold, it was discovered that the pressure within the tanktainer had built near the point of catastrophic failure of the tanktainer, at risk of explosion.

30.  On November 5, 2008 and prior to being notified on the filing of the Petition for Exoneration From or Limitation of Liability, Claimant/ Respondent filed an *in personam* lawsuit against Petitioners Schiffahrtsgesellschaft and Reederei in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, alleging wrongful death negligence under Florida law and general maritime law and requesting a jury trial under saving to suitors provision of 28 U.S.C. § 1333(1). *See* No. 08-054158 (Fla. 17th Cir. Ct.)

31.     On November 6, 2008, Claimant/ Respondent filed a lawsuit against the *M/V Madeleine in rem* with a letter of undertaking as security in lieu of an arrest, before the United States District Court, Southern District of Florida.  *See* No. 08-cv-61787-Cohn/Seltzer.

32.     The Petitioner did not allege nor incorporate the Vessel along with the *in personam* Petitioners.  Therefore Claimant/Respondent will require further guidance from the Court whether a transfer will be necessary or whether Claimants may proceed before the Honorable James I. Cohn with the separate security already provided.

33.     Claimant/Respondent will continue its litigation against all other Petitioners filed in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, who do not implicate the interest of the vessel or the above listed Petitioners.

**COUNT I**
**FLORIDA WRONGFUL DEATH AGAINST PETITIONER**
**SCHIFFAHRTSGESELLSCHAFT.MBH & CO.**

34.     Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this Claim as if fully set forth herein.

35.     This claim is governed by Florida Statute §§ 768.16 through 768.26 (hereinafter "Florida Wrongful Death Act")

36.     As the owner of the *Madeleine*, Petitioner Schiffahrtsgesellschaft had the following duties at all times material:

   a.     The duty to exercise ordinary care so as to provide a vessel with equipment in reasonable working condition so as to protect the safety of all crewmembers and passengers aboard the vessel and allow for the proper functioning of the vessel for the vessel's use as a cargo vessel.

b.     The duty to exercise ordinary care so as to inspect the vessel to assure the vessel was reasonably safe for all intended passengers, crew and/or purveyors, including proper safety equipment for the longshoremen during the loading of cargo in the vessel's cargo holds.

c.     The duty to exercise ordinary care so as to inspect the tanktainer containing hazardous gas and its valves prior to loading into an enclosed and unventilated cargo hold to assure the tanktainer was in proper working condition.

d.     The duty to provide a cargo hold with appropriate ventilation system which would provide sufficient oxygen or mix sufficient breathable air into the hold with any potential hazardous gas that may be loaded onto the vessel, so that there would be breathable air in the hold.

e.     The duty to warn of any inoperable and/or inadequate machinery and/or equipment, which could reasonably create a dangerous condition.

f.     The duty to intervene in stevedoring operations and stop work until any hazardous conditions are remedied when the vessel owner knew that the hazard posed a danger to any longshoremen and knew it could not rely on the stevedore to correct the problem.

g.     The duty to secure and prevent access to the cargo hold once the owner knew that the hazard posed a danger to any longshoremen and the vessel's crew.

h.     The duty to prepare and/or approve a stow plan that was reasonably safe and in compliance with applicable safety regulations.

i.     The duty to assure hazardous cargo was stored properly.

j.      The reasonable duty of care to train its crew and port captain on the proper procedures for handling emergency situations such as the gas leak from the tanktainer.

k.      The duty to train its crew and port captain about the location of emergency equipment and the proper use of said equipment for handling emergency situations such as the gas leak from the tank container and fallen longshoremen.

37.   Prior to the commencement of the loading operations aboard the *Madeleine*, Petitioner Schiffahrtsgesellschaft knew or should have known the ventilation was not working and/or was not providing sufficient oxygen or enough ventilation into cargo hold one (1), so as to provide breathable air in the hold in cases of gas leaks.

38.   Prior to the commencement of the loading operations aboard the *Madeleine*, Petitioner Schiffahrtsgesellschaft knew or should have known the hazardous argon gas was to be loaded aboard the vessel in Port Everglades, Florida.

39.   Petitioner Schiffahrtsgesellschaft did not warn the stevedore and its longshoremen, including the Decedent, James Cason, about the non-working ventilation system at the time loading operations commenced aboard the *Madeleine*.

40.   Petitioner Schiffahrtsgesellschaft and/or the *Madeleine* breached one or more of its aforesaid duties, and is thus liable for negligence, including in one or more of the following ways:

a.      Failing to provide and maintain the *Madeleine* and her with equipment in reasonable working condition so as to provide proper ventilation into the cargo hold;

b. Failing to exercise ordinary care so as to inspect the vessel to assure the vessel was reasonably safe for all intended passengers, crew and/or purveyors, including proper safety equipment for the longshoremen during the loading of cargo in the vessel's cargo holds.

c. Failing to inspect and insure the valves on the subject tanktainer were properly working prior to loading onto an enclosed cargo hold.

d. Failing to provide a cargo hold with appropriate ventilation system that would provide sufficient oxygen or mix sufficient breathable air into the hold with any potential hazardous gas that may be loaded onto the vessel, so that there would be breathable air in the hold.

e. Failing to warn the stevedore and their longshoremen that the ventilation system was inoperable and/or inadequate to provide ventilation in cargo hold one (1).

f. Failing intervene in stevedoring operations and stop work until the hazardous argon gas leak was remedied when the vessel owner knew that the hazard posed a danger to any longshoremen and knew it could not rely on the stevedore to correct the problem.

g. Failing to secure and prevent access to the cargo hold once the owner knew or should have known of the hazardous argon leak on board the vessel, thereby creating a danger to the longshoremen and the vessel's crew.

h. Failing to prepare and/or approve a stow plan that was reasonably safe, accurate and in compliance with applicable safety regulations.

i. Improperly storing hazardous materials in an unventilated cargo hold, in contraventions of cargo storage requirements.

      j.      Failing to train its crew and port captain on the proper procedures for handling emergency situations such as the gas leak from the tanktainer.

      k.      Failing to train the vessel's crew and port captain about the location of emergency equipment and the proper use of said equipment for handling emergency situations such as the gas leak from the tank container and fallen longshoremen.

41.    At all times material, Decedent exercised reasonable care for his own safety.

42.    As a direct and proximate result of the aforementioned fault or negligence of Petitioner Schiffahrtsgesellschaft and/or the *Madeleine*, James Cason, was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

43.    As a result of Petitioner and/or the *Madeleine's* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason, surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to: The loss of support and services from the date of Decedent's injury to his death, with interest; the future loss of support and services from the date of death; and the loss of parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury. The Decedent's Estate suffered the loss of earnings of the Deceased from the date of injury to the date of death, and has suffered and will continue to suffer the loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death. Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

44.     WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against Petitioner Schiffahrtsgesellschaft and/or the *Madeleine* for damages for the benefit of the Decedent's survivors and Estate; all damages as specified in the Wrongful Death Act caused by the injury resulting in death; that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with law; that upon proper notice and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

## COUNT II
## FLORIDA WRONGFUL DEATH BASED ON *RES IPSA LOGUITUR* NEGLIGENCE AGAINST PETITIONER SCHIFFAHRTSGESELLSCHAFT.MBH & CO.

45.     Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this Claim as if fully set forth herein.

46.     At all times material hereto, Decedent, James Cason, was without fault in regard to the argon gas incident that happened on or about May 19 and 20, 2008.

47.     At all times material hereto, the ventilation system of the *Madeleine* was under the exclusive control of the Vessel's owner, Schiffahrtsgesellschaft.

48.     The non-functioning ventilation system is of the type that ordinarily does not occur in the absence of negligence.

49.     The Decedent's incident is of a type that ordinarily does not occur in the absence of negligence.

11

50.     As a direct and proximate result of the aforementioned fault or negligence of the Petitioner Schiffahrtsgesellschaft and/or the *Madeleine*, James Cason, was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

51.      As a result of Petitioner and/or the *Madeleine's* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason, surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to: The loss of support and services from the date of Decedent's injury to his death, with interest; the future loss of support and services from the date of death; and the loss of parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury.  The Decedent's Estate suffered the loss of earnings of the Deceased from the date of injury to the date of death, and has suffered and will continue to suffer the loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death.  Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

52.     WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against Petitioner Schiffahrtsgesellschaft and/or the *Madeleine* for damages for the benefit of the Decedent's survivors and Estate; all damages as specified in the Wrongful Death Act caused by the injury resulting in death; that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with

law; that upon proper notice and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

**COUNT III**
**WRONGFUL DEATH UNDER TITLE 33 U.S.C. § 905(b) AND GENERAL MARITIME LAW FOR NEGLIGENCE AGAINST PETITIONER SHIFFAHRTSGES.MBH & CO.**

53.    Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this Claim as if fully set forth herein.

54.    Petitioner Schiffahrtsgesellschaft as the owner of the *Madeleine* has the following duties at all times material:

a.    The duty to exercise ordinary care to insure the vessel and its equipment are turned over to the stevedore, its longshoremen or other outsider contractors in such a condition that an experienced stevedore, longshoremen or contractor would be able to, with the exercise of ordinary care, carry on its cargo operations.

b.    The duty to warn a stevedore, longshoremen or contractor of dangers that are known to the vessel, or should be known through the exercise of reasonable care.

c.    The duty to exercise reasonable care to inspect and maintain itself and its equipment after stevedoring operation began so as to prevent harm to longshoremen from hazards in areas that remain within the active control of the shipowner.

and

d. The duty to intervene in stevedoring operations and stop work until any hazard is remedied when the Petitioner knew the hazard posed a danger to any longshoreman and knew it could not rely on the stevedore to correct the problem.

55. Prior to the time the *Madeleine* was turned over to the stevedore and its longshoremen, including the Decedent, James Cason, Jr., on or about May 19, 2008, Petitioner Schiffahrtsgesellschaft knew, or should have known, the ventilation system for the *Madeleine's* cargo hold was not working properly.

56. Prior to the time the *Madeleine* was turned over to the stevedore and its longshoremen, including the Decedent, James Cason, Jr., on or about May 19, 2008, Petitioner Schiffahrtsgesellschaft knew, or should have known, the ventilation system for the *Madeleine's* cargo hold would not/ did not provide sufficient oxygen or mix sufficient breathable air into the hold with any hazardous gas, so that there would be breathable air in the hold.

57. Prior to the time of the subject stevedoring operations on board the *Madeleine*, Petitioner Schiffahrtsgesellschaft knew, or should have known, of the shipment of argon gas that was to be loaded on board in Port Everglades, Florida.

58. Prior to the time of the subject stevedoring operations on board the *Madeleine*, Petitioner Schiffahrtsgesellschaft had an opportunity to repair or fix the Vessel's mechanical ventilation system.

59. Petitioner Schiffahrtsgesellschaft did not warn the stevedore and its longshoremen, including the Decedent, James Cason, about the non-working mechanical ventilation system at the time the Vessel was turned over.

60.     Petitioner Schiffahrtsgesellschaft and/or the *Madeleine* breached one or more of its aforesaid duties, and is thus liable for negligence under section 905(b) of the LHWCA, including in one or more of the following ways:

a.      The vessel was turned over to the stevedore and its longshoremen, including Decedent, with a defective and/or inoperative and/or inadequate and/or inadequately maintained and/or inspected ventilation system, which prevented the cargo operations from being performed with reasonable safety;

b.      The owner failed to turn over a vessel with a mechanical ventilation system that would oxygenate or mix breathable air with the hazardous argon gas into the hold, so that there would be breathable air in the hold.

c.      The vessel failed to warn the stevedore and its longshoremen, including Decedent, of the defective and/or inoperative and/or inadequate and/or inadequately maintained and/or inspected ventilation system;

d.      To the extent the owner of the vessel was in active control of any part of the vessel, its operation, its crew, the loading, the safety equipment or the operation of the ventilation system, the owner failed to exercise reasonable care to inspect and/or maintain the vessel and/or its equipment after stevedoring operations began, including by:

(1)     Failing to provide safety equipment or devices which would prevent death in circumstances of gas leak;

(2)     Failing to inspect and insure the valves on the subject tanktainer were properly working prior to loading onto an enclosed cargo hold;

15

    (3)    Failing to store the tanktainer in such a place that a leak would not cause serious injury or death;

    (4)    Failing to establish or execute a safety plan in circumstances where hazardous or unsafe material endangers individuals onboard the vessel;

    (5)    Preventing individuals aboard the ship from descending into the cargo hold once they were notified of potentially hazardous condition;

    (6)    Failing to immediately evacuate the ship and assuring no individuals were exposed to hazardous conditions once a leak was reported;

    (7)    Negligently supervising the loading of the ship or monitoring the ship's equipment;

    (8)    Failing to train their master, crew and port captain on proper procedures for handling emergency situations, the location of emergency equipment and proper use of said equipment in handling emergency situations such as the subject gas leak from the tanktainer and/or

    (9)    Inattentiveness of the master and/or her crew.

and/or

e.    After Petitioner Schiffahrtsgesellschaft knew there was a gas leak in the vessel's hold, Petitioner failed to intervene to stop cargo operations despite knowing it could not rely on the stevedore to correct the problem.

61.    At all times material, Decedent exercised reasonable care for his own safety.

62.    As a direct and proximate result of the aforementioned fault or negligence of Petitioner Schiffahrtsgesellschaft and/or the *Madeleine,* James Cason, was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

63.    As a result of Petitioner and/or the *Madeleine's* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason, surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to:  The loss of support, services, and society.  Recovery for loss of support includes all the financial contributions that the Decedent would have made to his dependents had he lived.  Recovery for loss of services includes the monetary value of services the decedent provided and would have continued to provide but for his wrongful death, such services including, for example, the nurture, training, education, and guidance that child would have received had not the parent been wrongfully killed, inclusive of physical, intellectual and moral training, sense of values, beliefs and experiences in life, that the child would have received from the parent but for the death, and services the decedent performed at home or for his dependents.  Loss of society is the deprivation by wrongful death of abroad range of mutual benefits each family member received from the others' continued existence, including love, affection, care attention, companionship, comfort, protection, assistance and consortium, which are a grave loss to the decedent's dependents.  The Decedent's Estate has suffered and will continue to suffer the loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death.  Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

64.     WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against the Petitioner Schiffahrtsgesellschaft and/or the *Madeleine* for any and all allowable damages, that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with law; that upon proper notice and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

## COUNT IV
### WRONGFUL DEATH BASED ON TITLE 33 U.S.C. § 905(b) AND GENERAL MARITIME LAW FOR *RES IPSA LOGUITUR* NEGLIGENCE AGAINST PETITIONER SHIFFAHRTSGES.MBH & CO.

65.     Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this Claim as if fully set forth herein.

66.     At all times material hereto, Decedent, James Cason, was without fault in regard to the argon gas incident that happened on or about May 19 and 20, 2008.

67.     At all times material hereto, the ventilation system of the *Madeleine* was under the exclusive control of the Vessel's owner, Petitioner Schiffahrtsgesellschaft.

68.     The non-functioning ventilation system is of the type that ordinarily does not occur in the absence of negligence.

69.     The Decedent's incident is of a type that ordinarily does not occur in the absence of negligence.

70. The general maritime law recognizes the doctrine of *res ipsa loquitur*. *Johnson v. United States*, 333 U.S. 46, 68 S. Ct. 391 (1948); *United States v. Baycon Indus., Inc.*, 804 F.2d 630 (11th Cir. 1986); *Rockey v. Royal Caribbean Cruises, Ltd.*, 2001 U.S. Dist. LEXIS 21886 (S. D. Fla. 2001).

71. At all times material, Decedent exercised reasonable care for his own safety.

72. As a direct and proximate result of the aforementioned fault or negligence of Petitioner, Schiffahrtsgesellschaft and/or the *Madeleine*, James Cason, was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

73. As a result of Petitioner and/or the *Madeleine's* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason, surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to: The loss of support, services, and society. Recovery for loss of support includes all the financial contributions that the Decedent would have made to his dependents had he lived. Recovery for loss of services includes the monetary value of services the decedent provided and would have continued to provide but for his wrongful death, such services including, for example, the nurture, training, education, and guidance that child would have received had not the parent been wrongfully killed, inclusive of physical, intellectual and moral training, sense of values, beliefs and experiences in life, that the child would have received from the parent but for the death, and services the decedent performed at home or for his dependents. Loss of society is the deprivation by wrongful death of abroad range of mutual benefits each family member received from the others'

19

continued existence, including love, affection, care attention, companionship, comfort, protection, assistance and consortium, which are a grave loss to the decedent's dependents.  The Decedent's Estate has suffered and will continue to suffer the loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death.  Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

74.      WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against the Petitioner Schiffahrtsgesellschaft and/or the *Madeleine* for any and all allowable damages; that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with law; that upon proper notice and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

**COUNT V**
**FLORIDA WRONGFUL DEATH AGAINST PETITIONER REEDEREI ALNWICK HARMSTORF & CO. GMBH & CO. KG**

75.      Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this Claim as if fully set forth herein.

76.      This claim is governed by Florida Statute §§ 768.16 through 768.26 (hereinafter "Florida Wrongful Death Act")

77.     As the manager of the *Madeleine*, Petitioner Reederei, has the following duties at all times material:

    a.     The duty to exercise ordinary care so as to provide and maintain the *Madeleine* and her equipment in reasonable working condition so as to protect the safety of all crewmembers and passengers aboard the vessel and allow for the proper functioning of the vessel for the vessel's use as a cargo vessel.

    b.     The duty to exercise ordinary care so as to inspect the vessel to assure the vessel was reasonably safe for all intended passengers, crew and/or purveyors, including proper safety equipment for the longshoremen during the loading of cargo in the vessel's cargo holds.

    c.     The duty to exercise ordinary care so as to inspect the tanktainer containing hazardous gas and its valves prior to loading into an enclosed and unventilated cargo hold to assure the tanktainer was in proper working condition.

    d.     The duty to provide and/or maintain the cargo holds with appropriate ventilation system that would provide sufficient oxygen or mix sufficient breathable air into the hold with any potential hazardous gas that may be loaded onto the vessel, so that there would be breathable air in the hold.

    e.     The duty to warn of any inoperable and/or inadequate machinery and/or equipment, which could reasonably create a dangerous condition.

    f.     The duty to intervene in stevedoring operations and stop work until any hazardous conditions are remedied when the vessel manager knew that the hazard posed a danger to any longshoremen and knew it could not rely on the stevedore to correct the problem.

g.     The duty to secure and prevent access to the cargo hold once the manager knew that the hazard posed a danger to any longshoremen and the vessel's crew.

h.     The duty to prepare and/or approve a stow plan that was reasonably safe and in compliance with applicable safety regulations.

i.     The duty to assure hazardous cargo was stored properly.

j.     The reasonable duty of care to train its crew and port captain on the proper procedures for handling emergency situations such as the gas leak from the tanktainer.

k.     The duty to train its crew and port captain about the location of emergency equipment and the proper use of said equipment for handling emergency situations such as the gas leak from the tank container and fallen longshoremen.

78.    Prior to the commencement of the loading operations aboard the *Madeleine*, Petitioner Reederei knew or should have known the ventilation was not working and/or was not providing sufficient oxygen or enough ventilation into cargo hold one (1), so as to provide breathable air in the hold in cases of gas leaks.

79.    Prior to the commencement of the loading operations aboard the *Madeleine*, Petitioner Reederei knew or should have known the hazardous argon gas was to be loaded aboard the vessel in Port Everglades, Florida.

80.    Petitioner Reederei did not warn the stevedore and its longshoremen, including the Decedent, James Cason, about the non-working ventilation system at the time loading operations commenced aboard the *Madeleine*.

81.    Petitioner Reederei and/or the *Madeleine* breached one or more of its aforesaid duties, and is thus liable for negligence, including in one or more of the following ways:

a.   Failing to provide and maintain the *Madeleine* and her with equipment in reasonable working condition so as to provide proper ventilation into the cargo hold;

b.   Failing to exercise ordinary care so as to inspect the vessel to assure the vessel was reasonably safe for all intended passengers, crew and/or purveyors, including proper safety equipment for the longshoremen during the loading of cargo in the vessel's cargo holds.

c.   Failing to inspect and insure the valves on the subject tanktainer were properly working prior to loading onto an enclosed cargo hold.

d.   Failing to provide a cargo hold with appropriate ventilation system that would provide sufficient oxygen or mix sufficient breathable air into the hold with any potential hazardous gas that may be loaded onto the vessel, so that there would be breathable air in the hold.

e.   Failing to warn the stevedore and their longshoremen that the ventilation system was inoperable and/or inadequate to provide ventilation in cargo hold one (1).

f.   Failing intervene in stevedoring operations and stop work until the hazardous argon gas leak was remedied when the vessel owner knew that the hazard posed a danger to any longshoremen and knew it could not rely on the stevedore to correct the problem.

g.   Failing to secure and prevent access to the cargo hold once the manager knew or should have known of the hazardous argon leak on board the vessel, thereby creating a danger to the longshoremen and the vessel's crew.

h.      Failing to prepare and/or approve a stow plan that was reasonably safe and in compliance with applicable safety regulations.

i.      Improperly storing hazardous materials in an unventilated cargo hold, in contraventions of cargo storage requirements.

j.      Failing to train its crew and port captain on the proper procedures for handling emergency situations such as the gas leak from the tanktainer.

k.      Failing to train the vessel's crew and port captain about the location of emergency equipment and the proper use of said equipment for handling emergency situations such as the gas leak from the tank container and fallen longshoremen.

82.    At all times material, Decedent exercised reasonable care for his own safety.

83.    As a direct and proximate result of the aforementioned fault or negligence of Petitioner Reederei and/or the *Madeleine*, James Cason, was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

84.    As a result of Petitioner and/or the *Madeleine's* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason, surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to: The loss of support and services from the date of Decedent's injury to his death, with interest; the future loss of support and services from the date of death; and the loss of parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury. The Decedent's Estate suffered the loss of earnings of the Deceased from the date of injury to the date of death, and has suffered and will continue

to suffer the loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death.  Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

85.    WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against Petitioner Reederei and/or the *Madeleine* for damages for the benefit of the Decedent's survivors and Estate; all damages as specified in the Wrongful Death Act caused by the injury resulting in death; that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with law; that upon proper notice and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

**COUNT VI**
**FLORIDA WRONGFUL DEATH BASED ON *RES IPSA LOGUITUR* NEGLIGENCE AGAINST PETITIONER REEDEREI ALNWICK HARMSTORF & CO. GMBH & CO. KG**

86.    Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this Claim as if fully set forth herein.

87.    At all times material hereto, Decedent, James Cason, was without fault in regard to the argon gas incident that happened on or about May 19 and 20, 2008.

88.    At all times material hereto, the ventilation system of the *Madeleine* was under the exclusive control of the vessel's manager, Reederei.

89.     Additionally, transportation of the tanktainer was under the exclusive control of the Petitioners.

90.     The non-functioning ventilation system is of the type that ordinarily does not occur in the absence of negligence.

91.     The damaging and over-tightening of the valves on the tanktainer and its overfilling is of the type that ordinarily does not occur in the absence of negligence.

92.     The Decedent's incident is of a type that ordinarily does not occur in the absence of negligence.

93.     All Petitioners jointly and severally contributed and/or caused this incident.

94.     As a direct and proximate result of the aforementioned fault or negligence of the Petitioner and/or the *Madeleine*, James Cason, was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

95.     As a result of Petitioner and/or the *Madeleine* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason, surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to: The loss of support and services from the date of Decedent's injury to his death, with interest; the future loss of support and services from the date of death; and the loss of parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury. The Decedent's Estate suffered the loss of earnings of the Deceased from the date of injury to the date of death, and has suffered and will continue to suffer the loss of the prospective net accumulations of an estate, which might

reasonably have been expected but for the wrongful death. Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

96.    WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against Petitioner Reederei and/or the *Madeleine* for damages for the benefit of the Decedent's survivors and Estate; all damages as specified in the Wrongful Death Act caused by the injury resulting in death; that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with law; that upon proper notice and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

## COUNT VII
## WRONGFUL DEATH UNDER TITLE 33 U.S.C. § 905(b) AND GENERAL MARITIME LAW FOR NEGLIGENCE AGAINST PETITIONER REEDEREI ALNWICK HARMSTORF & CO. GMBH & CO. KG

97.    Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this Claim as if fully set forth herein.

98.    Petitioner Reederei, as the alleged manager of the *Madeleine* has the following duties at all times material:

   a.    The duty to exercise ordinary care to insure the vessel and its equipment are turned over to the stevedore, its longshoremen or other outsider contractors in

such a condition that an experienced stevedore, longshoremen or contractor would be able to, with the exercise of ordinary care, carry on its cargo operations.

b.　　The duty to warn a stevedore, longshoremen or contractor of dangers that are known to the vessel, or should be known through the exercise of reasonable care.

c.　　The duty to exercise reasonable care to inspect and maintain itself and its equipment after stevedoring operation began so as to prevent harm to longshoremen from hazards in areas that remain within the active control of the shipowner.

and

d.　　The duty to intervene in stevedoring operations and stop work until any hazard is remedied when the Petitioner knew the hazard posed a danger to any longshoreman and knew it could not rely on the stevedore to correct the problem.

99.　　Prior to the time the *Madeleine* was turned over to the stevedore and its longshoremen, including the Decedent, James Cason, Jr., on or about May 19, 2008, Petitioner Reederei knew, or should have known, the ventilation system for the *Madeleine's* cargo hold was not working properly.

100.　　Prior to the time the *Madeleine* was turned over to the stevedore and its longshoremen, including the Decedent, James Cason, Jr., on or about May 19, 2008, Petitioner Reederei knew, or should have known, the ventilation system for the *Madeleine's* cargo hold would not/ did not provide sufficient oxygen or mix sufficient breathable air into the hold with any hazardous gas, so that there would be breathable air in the hold.

101.   Prior to the time of the subject stevedoring operations on board the *Madeleine*, Petitioner Reederei knew, or should have known, of the shipment of argon gas that was to be loaded on board in Port Everglades, Florida.

102.   Prior to the time of the subject stevedoring operations on board the *Madeleine*, Petitioner Reederei had an opportunity to repair or fix the Vessel's mechanical ventilation system.

103.   Petitioner Reederei did not warn the stevedore and its longshoremen, including the Decedent, James Cason, about the non-working mechanical ventilation system at the time the Vessel was turned over.

104.   Petitioner Reederei and/or the *Madeleine* breached one or more of its aforesaid duties, and is thus liable for negligence under section 905(b) of the LHWCA, including in one or more of the following ways:

a.   The vessel was turned over to the stevedore and its longshoremen, including Decedent, with a defective and/or inoperative and/or inadequate and/or inadequately maintained and/or inspected ventilation system, which prevented the cargo operations from being performed with reasonable safety;

b.   The owner failed to turn over a vessel with a mechanical ventilation system that would oxygenate or mix breathable air with the hazardous argon gas into the hold, so that there would be breathable air in the hold.

c.   The vessel failed to warn the stevedore and its longshoremen, including Decedent, of the defective and/or inoperative and/or inadequate and/or inadequately maintained and/or inspected ventilation system;

d.   To the extent the owner of the vessel was in active control of any part of the vessel, its operation, its crew, the loading, the safety equipment or the operation

of the ventilation system, the owner failed to exercise reasonable care to inspect and/or maintain the vessel and/or its equipment after stevedoring operations began, including by:

(1)     Failing to provide safety equipment or devices which would prevent death in circumstances of gas leak;

(2)     Failing to inspect and insure the valves on the subject tanktainer were properly working prior to loading onto an enclosed cargo hold;

(3)     Failing to store the tanktainer in such a place that a leak would not cause serious injury or death;

(4)     Failing to establish or execute a safety plan in circumstances where hazardous or unsafe material endangers individuals onboard the vessel;

(5)     Preventing individuals aboard the ship from descending into the cargo hold once they were notified of potentially hazardous condition;

(6)     Failing to immediately evacuate the ship and assuring no individuals were exposed to hazardous conditions once a leak was reported;

(7)     Negligently supervising the loading of the ship or monitoring the ship's equipment;

(8)     Failing to train their master, crew and port captain on proper procedures for handling emergency situations, the location of emergency equipment and proper use of said equipment in handling emergency situations such as the subject gas leak from the tanktainer and/or

(9)     Inattentiveness of the master and/or her crew.

and/or

e.      After Petitioner Reederei knew there was a gas leak in the vessel's hold, Petitioner failed to intervene to stop cargo operations despite knowing it could not rely on the stevedore to correct the problem.

105.   At all times material, Decedent exercised reasonable care for his own safety.

106.   As a direct and proximate result of the aforementioned fault or negligence of Petitioner Reederei and/or the *Madeleine*, James Cason, was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

107.    As a result of Petitioner and/or the *Madeleine* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason, surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to:  The loss of support, services, and society.  Recovery for loss of support includes all the financial contributions that the Decedent would have made to his dependents had he lived.  Recovery for loss of services includes the monetary value of services the decedent provided and would have continued to provide but for his wrongful death, such services including, for example, the nurture, training, education, and guidance that child would have received had not the parent been wrongfully killed, inclusive of physical, intellectual and moral training, sense of values, beliefs and experiences in life, that the child would have received from the parent but for the death, and services the decedent performed at home or for his dependents.  Loss of society is the deprivation by wrongful death of abroad range of mutual benefits each family member received from the others' continued existence, including love, affection, care attention, companionship, comfort,

protection, assistance and consortium, which are a grave loss to the decedent's dependents. The Decedent's Estate has suffered and will continue to suffer the loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death. Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

108.    WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against the Petitioner Reederei and/or the *Madeleine* for any and all allowable damages; that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with law; that upon proper notice and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

### COUNT VIII
### WRONGFUL DEATH BASED ON TITLE 33 U.S.C. § 905(b) AND GENERAL MARITIME LAW FOR *RES IPSA LOGUITUR* NEGLIGENCE AGAINST PETITIONER REEDEREI ALNWICK HARMSTORF & CO. GMBH & CO. KG

109.    Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this Claim as if fully set forth herein.

110.    At all times material hereto, Decedent, James Cason, was without fault in regard to the argon gas incident that happened on or about May 19 and 20, 2008.

111.   At all times material hereto, the ventilation system of the *Madeleine* was under the exclusive control of the Vessel's manager, Petitioner Reederei.

112.   The non-functioning ventilation system is of the type that ordinarily does not occur in the absence of negligence.

113.   The Decedent's incident is of a type that ordinarily does not occur in the absence of negligence.

114.   The general maritime law recognizes the doctrine of *res ipsa loquitur. Johnson v. United States*, 333 U.S. 46, 68 S. Ct. 391 (1948); *United States v. Baycon Indus., Inc.*, 804 F.2d 630 (11th Cir. 1986); *Rockey v. Royal Caribbean Cruises, Ltd.*, 2001 U.S. Dist. LEXIS 21886 (S. D. Fla. 2001).

115.   At all times material, Decedent exercised reasonable care for his own safety.

116.   As a direct and proximate result of the aforementioned fault or negligence of Petitioner, Reederei and/or the *Madeleine*, James Cason was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

117.   As a result of Petitioner and/or the *Madeleine's* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason, surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to: The loss of support, services, and society. Recovery for loss of support includes all the financial contributions that the Decedent would have made to his dependents had he lived. Recovery for loss of services includes the monetary value of services the decedent provided and would have continued to provide but for his wrongful death, such services

including, for example, the nurture, training, education, and guidance that child would have received had not the parent been wrongfully killed, inclusive of physical, intellectual and moral training, sense of values, beliefs and experiences in life, that the child would have received from the parent but for the death, and services the decedent performed at home or for his dependents.  Loss of society is the deprivation by wrongful death of abroad range of mutual benefits each family member received from the others' continued existence, including love, affection, care attention, companionship, comfort, protection, assistance and consortium, which are a grave loss to the decedent's dependents.  The Decedent's Estate has suffered and will continue to suffer the loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death.  Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

118.   WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against the Petitioner Reederei and/or the *Madeleine* for any and all allowable damages; that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with law; that upon proper notice and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

## COUNT IX
## FLORIDA WRONGFUL DEATH AGAINST PETITIONER
## BANGOR CASTLE SHIPPING COMPANY LIMITED

119.    Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of
        James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this
        Claim as if fully set forth herein.

120.    This claim is governed by Florida Statute §§ 768.16 through 768.26 (hereinafter "Florida
        Wrongful Death Act")

121.    As the charterer and/or owner *pro hac vice* of the *Madeleine*, Petitioner Bangor Castle,
         has the following duties at all times material:

        a.      The duty to exercise ordinary care so as to provide and maintain the *Madeleine*
                and her equipment in reasonable working condition so as to protect the safety of
                all crewmembers and passengers aboard the vessel and allow for the proper
                functioning of the vessel for the vessel's use as a cargo vessel;

        b.      The duty to exercise ordinary care so as to inspect the vessel to assure the vessel
                was reasonably safe for all intended passengers, crew and/or purveyors, including
                proper safety equipment for the longshoremen during the loading of cargo in the
                vessel's cargo holds;

        c.      The duty to exercise ordinary care so as to inspect the tanktainer containing
                hazardous gas and its valves prior to loading into a enclosed and unventilated
                cargo hold to assure the tanktainer was in proper working condition;

        d.      The duty to provide and/or maintain the cargo holds with appropriate ventilation
                system that would provide sufficient oxygen or mix sufficient breathable air into

the hold with any potential hazardous gas that may be loaded onto the vessel, so that there would be breathable air in the hold;

e.      The duty to warn of any inoperable and/or inadequate machinery and/or equipment, which could reasonably create a dangerous condition;

f.      The duty to intervene in stevedoring operations and stop work until any hazardous conditions are remedied when the vessel charter and/or owner *pro hac vice* knew that the hazard posed a danger to any longshoremen and knew it could not rely on the stevedore to correct the problem;

g.      The duty to secure and prevent access to the cargo hold once the charterer/ owner *pro hac vice* knew or should have known of the hazardous argon leak on board the vessel, thereby creating a danger to the longshoremen and the vessel's crew;

h.      The duty to secure and prevent access to the cargo hold once the charter/owner *pro hac vice* knew that the hazard posed a danger to any longshoremen and the vessel's crew;

i.      The duty to prepare and/or approve a stow plan that was reasonably safe and in compliance with applicable safety regulations;

j.      The duty to assure hazardous cargo was stored properly;

k.      The reasonable duty of care to train its crew and port captain on the proper procedures for handling emergency situations such as the gas leak from the tanktainer;

and/or

  l.  The duty to train its crew and port captain about the location of emergency equipment and the proper use of said equipment for handling emergency situations such as the gas leak from the tank container and fallen longshoremen.

122. Prior to the commencement of the loading operations aboard the *Madeleine*, Petitioner Bangor Castle knew or should have known the ventilation was not working and/or was not providing sufficient oxygen or enough ventilation into cargo hold one (1), so as to provide breathable air in the hold in cases of gas leaks.

123. Prior to the commencement of the loading operations aboard the *Madeleine*, Petitioner Bangor Castle knew or should have known the hazardous argon gas was to be loaded aboard the vessel in Port Everglades, Florida.

124. Petitioner Bangor Castle did not warn the stevedore and its longshoremen, including the Decedent, James Cason, about the non-working ventilation system at the time loading operations commenced aboard the *Madeleine*.

125. Petitioner Bangor Castle and/or the *Madeleine* breached one or more of its aforesaid duties, and is thus liable for negligence, including in one or more of the following ways:

  a.  Failing to provide and maintain the *Madeleine* and her with equipment in reasonable working condition so as to provide proper ventilation into the cargo hold;

  b.  Failing to exercise ordinary care so as to inspect the vessel to assure the vessel was reasonably safe for all intended passengers, crew and/or purveyors, including proper safety equipment for the longshoremen during the loading of cargo in the vessel's cargo holds;

    c.      Failing to inspect and insure the valves on the subject tanktainer were properly working prior to loading onto an enclosed cargo hold;

    d.      Failing to provide a cargo hold with appropriate ventilation system that would provide sufficient oxygen or mix sufficient breathable air into the hold with any potential hazardous gas that may be loaded onto the vessel, so that there would be breathable air in the hold;

    e.      Failing to warn the stevedore and their longshoremen that the ventilation system was inoperable and/or inadequate to provide ventilation in cargo hold one (1);

    f.      Failing intervene in stevedoring operations and stop work until the hazardous argon gas leak was remedied when the vessel owner knew that the hazard posed a danger to any longshoremen and knew it could not rely on the stevedore to correct the problem;

    g.      Failing to prepare and/or approve a stow plan that was reasonably safe and in compliance with applicable safety regulations;

    h.      Improperly storing hazardous materials in an unventilated cargo hold, in contraventions of cargo storage requirements;

    i.      Failing to train its crew and port captain on the proper procedures for handling emergency situations such as the gas leak from the tanktainer;

 and/or

    j.      Failing to train the vessel's crew and port captain about the location of emergency equipment and the proper use of said equipment for handling emergency situations such as the gas leak from the tank container and fallen longshoremen.

126.    At all times material, Decedent exercised reasonable care for his own safety.

127.   As a direct and proximate result of the aforementioned fault or negligence of Petitioner Bangor Castle and/or the *Madeleine*, James Cason, was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

128.    As a result of Petitioner and/or the *Madeleine's* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason, surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to: The loss of support and services from the date of Decedent's injury to his death, with interest; the future loss of support and services from the date of death; and the loss of parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury.  The Decedent's Estate suffered the loss of earnings of the Deceased from the date of injury to the date of death, and has suffered and will continue to suffer the loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death.  Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

129.   WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against Petitioner Bangor Castle and/or the *Madeleine* for damages for the benefit of the Decedent's survivors and Estate; all damages as specified in the Wrongful Death Act caused by the injury resulting in death; that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with law; that upon proper notice

and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

### COUNT X
### FLORIDA WRONGFUL DEATH BASED ON *RES IPSA LOGUITUR* NEGLIGENCE AGAINST PETITIONER BANGOR CASTLE SHIPPING COMPANY LIMITED

130.   Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this Claim as if fully set forth herein.

131.   At all times material hereto, Decedent, James Cason, was without fault in regard to the argon gas incident that happened on or about May 19 and 20, 2008.

132.   At all times material hereto, the ventilation system of the *Madeleine* was under the exclusive control of the Vessel's charter/ owner *pro hac vice*, Bangor Castle.

133.   The non-functioning ventilation system is of the type that ordinarily does not occur in the absence of negligence.

134.   The Decedent's incident is of a type that ordinarily does not occur in the absence of negligence.

135.   As a direct and proximate result of the aforementioned fault or negligence of the Petitioner Bangor Castle and/or the *Madeleine*, James Cason, was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

136.   As a result of Petitioner and/or the *Madeleine's* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason,

surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to: The loss of support and services from the date of Decedent's injury to his death, with interest; the future loss of support and services from the date of death; and the loss of parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury. The Decedent's Estate suffered the loss of earnings of the Deceased from the date of injury to the date of death, and has suffered and will continue to suffer the loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death. Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

137.   WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against Petitioner Bangor Castle and/or the *Madeleine* for damages for the benefit of the Decedent's survivors and Estate; all damages as specified in the Wrongful Death Act caused by the injury resulting in death; that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with law; that upon proper notice and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

## COUNT XI
## WRONGFUL DEATH UNDER TITLE 33 U.S.C. § 905(b) AND GENERAL MARITIME LAW FOR NEGLIGENCE AGAINST PETITIONER BANGOR CASTLE SHIPPING COMPANY LIMITED

138.   Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this Claim as if fully set forth herein.

139.   Petitioner Bangor Castle, as the charter and/or owner *pro hac vice* of the *Madeleine* has the following duties at all times material:

   a.   The duty to exercise ordinary care to insure the vessel and its equipment are turned over to the stevedore, its longshoremen or other outsider contractors in such a condition that an experienced stevedore, longshoremen or contractor would be able to, with the exercise of ordinary care, carry on its cargo operations.

   b.   The duty to warn a stevedore, longshoremen or contractor of dangers that are known to the vessel, or should be known through the exercise of reasonable care.

   c.   The duty to exercise reasonable care to inspect and maintain itself and its equipment after stevedoring operation began so as to prevent harm to longshoremen from hazards in areas that remain within the active control of the shipowner.

and

   d.   The duty to intervene in stevedoring operations and stop work until any hazard is remedied when the Petitioner knew the hazard posed a danger to any longshoreman and knew it could not rely on the stevedore to correct the problem.

140.   Prior to the time the *Madeleine* was turned over to the stevedore and its longshoremen, including the Decedent, James Cason, Jr., on or about May 19, 2008, Petitioner Bangor

Castle, knew, or should have known, the ventilation system for the *Madeleine's* cargo hold was not working properly.

141.   Prior to the time the *Madeleine* was turned over to the stevedore and its longshoremen, including the Decedent, James Cason, Jr., on or about May 19, 2008, Petitioner Bangor Castle, knew, or should have known, the ventilation system for the *Madeleine's* cargo hold would not/ did not provide sufficient oxygen or mix sufficient breathable air into the hold with any hazardous gas, so that there would be breathable air in the hold.

142.   Prior to the time of the subject stevedoring operations on board the *Madeleine*, Petitioner Bangor Castle, knew, or should have known, of the shipment of argon gas that was to be loaded on board in Port Everglades, Florida.

143.   Prior to the time of the subject stevedoring operations on board the *Madeleine*, Petitioner Bangor Castle, had an opportunity to repair or fix the Vessel's mechanical ventilation system.

144.   Petitioner Bangor Castle, did not warn the stevedore and its longshoremen, including the Decedent, James Cason, about the non-working mechanical ventilation system at the time the Vessel was turned over.

145.   Petitioner Bangor Castle and/or the *Madeleine* breached one or more of its aforesaid duties, and is thus liable for negligence under section 905(b) of the LHWCA, including in one or more of the following ways:

a.      The vessel was turned over to the stevedore and its longshoremen, including Decedent, with a defective and/or inoperative and/or inadequate and/or inadequately maintained and/or inspected ventilation system, which prevented the cargo operations from being performed with reasonable safety;

b.    The charter and/or owner *pro hac vice* failed to turn over a vessel with a mechanical ventilation system that would oxygenate or mix breathable air with the hazardous argon gas into the hold, so that there would be breathable air in the hold.

c.    The vessel failed to warn the stevedore and its longshoremen, including Decedent, of the defective and/or inoperative and/or inadequate and/or inadequately maintained and/or inspected ventilation system;

d.    To the extent the charter and/or owner *pro hac vice* of the vessel was in active control of any part of the vessel, its operation, its crew, the loading, the safety equipment or the operation of the ventilation system, Petitioner failed to exercise reasonable care to inspect and/or maintain the vessel and/or its equipment after stevedoring operations began, including by:

    (1)    Failing to provide safety equipment or devices which would prevent death in circumstances of gas leak;

    (2)    Failing to inspect and insure the valves on the subject tanktainer were properly working prior to loading onto an enclosed cargo hold;

    (3)    Failing to store the tanktainer in such a place that a leak would not cause serious injury or death;

    (4)    Failing to establish or execute a safety plan in circumstances where hazardous or unsafe material endangers individuals onboard the vessel;

    (5)    Preventing individuals aboard the ship from descending into the cargo hold once they were notified of potentially hazardous condition;

(6)     Failing to immediately evacuate the ship and assuring no individuals were exposed to hazardous conditions once a leak was reported;

(7)     Negligently supervising the loading of the ship or monitoring the ship's equipment;

(8)     Failing to train their master, crew and port captain on proper procedures for handling emergency situations, the location of emergency equipment and proper use of said equipment in handling emergency situations such as the subject gas leak from the tanktainer and/or

(9)     Inattentiveness of the master and/or her crew.

and/or

e.     After Petitioner Bangor Castle, knew there was a gas leak in the vessel's hold, Petitioner failed to intervene to stop cargo operations despite knowing it could not rely on the stevedore to correct the problem.

146.     At all times material, Decedent exercised reasonable care for his own safety.

147.     As a direct and proximate result of the aforementioned fault or negligence of Petitioner Bangor Castle and/or the *Madeleine*, James Cason, was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

148.     As a result of Petitioner and/or the *Madeleine's* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason, surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to:  The loss of support, services, and society.  Recovery for loss of support includes all

the financial contributions that the Decedent would have made to his dependents had he lived.  Recovery for loss of services includes the monetary value of services the decedent provided and would have continued to provide but for his wrongful death, such services including, for example, the nurture, training, education, and guidance that child would have received had not the parent been wrongfully killed, inclusive of physical, intellectual and moral training, sense of values, beliefs and experiences in life, that the child would have received from the parent but for the death, and services the decedent performed at home or for his dependents.  Loss of society is the deprivation by wrongful death of abroad range of mutual benefits each family member received from the others' continued existence, including love, affection, care attention, companionship, comfort, protection, assistance and consortium, which are a grave loss to the decedent's dependents.  The Decedent's Estate has suffered and will continue to suffer the loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death.  Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

149.    WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against the Petitioner Bangor Castle and/or the *Madeleine* for any and all allowable damages; that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with law; that upon proper notice and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues

46

so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

## COUNT XII
## WRONGFUL DEATH BASED ON TITLE 33 U.S.C. § 905(b) AND GENERAL MARITIME LAW FOR *RES IPSA LOGUITUR* NEGLIGENCE AGAINST PETITIONER BANGOR CASTLE SHIPPING COMPANY LIMITED

150.    Claimant/Respondent, James Cason, Jr., as the Personal Representative of the Estate of James Cason, Decedent, realleges the allegations contained in paragraphs 1 - 33 of this Claim as if fully set forth herein.

151.    At all times material hereto, Decedent, James Cason, was without fault in regard to the argon gas incident that happened on or about May 19 and 20, 2008.

152.    At all times material hereto, the ventilation system of the *Madeleine* was under the exclusive control of the Vessel's owner, Petitioner Bangor Castle.

153.    The non-functioning ventilation system is of the type that ordinarily does not occur in the absence of negligence.

154.    The Decedent's incident is of a type that ordinarily does not occur in the absence of negligence.

155.    The general maritime law recognizes the doctrine of *res ipsa loquitur*. *Johnson v. United States*, 333 U.S. 46, 68 S. Ct. 391 (1948); *United States v. Baycon Indus., Inc.*, 804 F.2d 630 (11th Cir. 1986); *Rockey v. Royal Caribbean Cruises, Ltd.*, 2001 U.S. Dist. LEXIS 21886 (S. D. Fla. 2001).

156.    At all times material, Decedent exercised reasonable care for his own safety.

157.    As a direct and proximate result of the aforementioned fault or negligence of Petitioner Bangor Castle and/or the *Madeleine*, James Cason, was suffocated and killed by inhaling hazardous gas while working on board the Vessel.

158.    As a result of Petitioner and/or the *Madeleine's* negligence or recklessness, James Cason Jr., surviving minor son of the Decedent; Juvasia Cason, surviving minor daughter of the Decedent; Jarvaris Cason, surviving minor son of the Decedent; Jaleceia Cason, surviving minor daughter of the Decedent; Justin Cason, surviving minor son of the Decedent, and the Estate of the Decedent, all suffered damages, including but not limited to:  The loss of support, services, and society.  Recovery for loss of support includes all the financial contributions that the Decedent would have made to his dependents had he lived.  Recovery for loss of services includes the monetary value of services the decedent provided and would have continued to provide but for his wrongful death, such services including, for example, the nurture, training, education, and guidance that child would have received had not the parent been wrongfully killed, inclusive of physical, intellectual and moral training, sense of values, beliefs and experiences in life, that the child would have received from the parent but for the death, and services the decedent performed at home or for his dependents.  Loss of society is the deprivation by wrongful death of abroad range of mutual benefits each family member received from the others' continued existence, including love, affection, care attention, companionship, comfort, protection, assistance and consortium, which are a grave loss to the decedent's dependents.  The Decedent's Estate has suffered and will continue to suffer the loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death.  Also, medical or funeral expenses due to the Decedent's injury or death have become a charge against his Estate or were paid by or on behalf of Decedent.

159.    WHEREFORE, the Claimant/Respondent, James Cason, Jr., as Personal Representative of the Estate of James Cason, Decedent, demands: judgment against the Petitioner Bangor Castle and/or the *Madeleine* for any and all allowable damages; that Claimant be decreed to have a lien upon the posted bond or substitute security and that such lien be foreclosed in accordance with law; that upon proper notice and hearing, judgment be entered against the Petitioners and the posted bond or substitute security for all of Claimant's damages together with prejudgment interest and costs; jury trial for all issues so triable; Petitioners Complaint be dismissed in its entirety and any other relief this Honorable Court deems just and proper.

## ANSWER TO PETITION

160.    Claimant/Respondent is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 1 of the Petition and therefore they are denied.

161.    Claimant/Respondent admits the allegations in Paragraph 2 of the Petition.

162.    Petitioner admits Reederei is the manager of the vessel *Madeleine*. Claimant/ is without sufficient knowledge to either admit or deny the remaining allegations contained in Paragraph 3 and therefore they are denied.

163.    Claimant/Respondent is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 4 and therefore they are denied.

164.    Claimant/Respondent admits the allegations of Paragraph 5.

165.    Claimant/Respondent is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 6 of the Petition and therefore they are denied. However, the figure given to the Court is lower to a previous letter of undertaking given to Claimant/ Respondents which placed the value at $14,500,000.00.

166.    Claimant/Respondent denies the allegations contained in Paragraph 7.

167.    Claimant/Respondent is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 8 and therefore they are denied.

168.    In response to Paragraph 9, Claimant/Respondent admits the *Madeleine* has not been arrested in regard to this incident.  The vessel *Madeleine* was sued *in rem* prior to being served with notice of the Court Monition and pursuant to a letter of undertaking, making an arrest or attachment unnecessary.  Claimant/Respondent similarly filed suit against Petitioners Schiffahrtsgesellschaft.mbH & Co. and Reederei Alnwick Harmstorf & Co. GMBH & Co. KG, before the 17th Judicial Circuit Court of Florida, in and for Broward County.

169.    Claimant/Respondent is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 10 and therefore they are denied.

170.    Any allegations contained in the Petition that are not specifically admitted herein are hereby denied.

## AFFIRMATIVE DEFENSES

171.    The Petition fails to state a cause of action and/or petitioner is not entitled to the relief requested.

172.    The Petitioner cannot exonerate themselves from liability for the subject accident because they are strictly liable, negligent or otherwise at fault for the faulty or dangerous conditions that existed on board the Vessel, which contributed in causing the subject accident and in which they are jointly and severally liable.

173.    Petitioners Reederei and Bangor are not "owners" and they do not qualify as an "owner" pursuant to 46 U.S.C. § 30501 and therefore they are not entitled to limit their liability.

174.    Petitioners' directors, officers, members, managers, master and/or port captain have "privity or knowledge" of the faulty and/or dangerous conditions existing on board the Vessel that contributed in causing the subject accident and therefore they are not entitled to limit their liability.

175.    Limitation of liability is not available based upon a personal contract between the owner and the charter.

176.    The value of the fund is insufficient, is not consistent with the letter of undertaking entered into by the ship owner and does not account for the freight which was onboard the *Madeleine* as required by Supplemental Rule F(2).

DATED THIS 8th day of January, 2009.

Respectfully submitted,

**DOWNS BRILL WHITEHEAD**
*Attorneys for the Claimant*
Mercantile Bank Building
One Southwest 129th Avenue
Suite 305
Pembroke Pines, FL 33027
Telephone No.:   (954) 447-3556
Facsimile No.:   (954) 447-3557

s/ Juan M. Garcia, Esq.
David W. Brill, Esq.
Florida Bar No. 959560
dbrill@dbwlaw.com
Juan M. Garcia, Esq.
Florida Bar No.15258
jgarcia@dbwlaw.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 08-61757 – CIV – MORENO/TORRES**

IN RE: THE PETITION OF MS "MADELEINE"
SCHIFFAHRTSGESELLSCHAFT mbH & CO.,
KG, REEDEREI ALNWICK HARMSTORF &
CO. GmbH & CO. KG AND BANGOR CASTLE
SHIPPING COMPANY LIMITED AS OWNER,
MANAGING   OWNER   AND   BAREBOAT
CHARTERER   RESPECTIVELY   OF   THE
VESSEL   M/V   "MADELEINE",   FOR
EXONCERATION FROM OR LIMITATION OF
LIABILITY,

Petitioners
_____/

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Juan M. Garcia, Esq.
Juan M. Garcia, Esq.
Florida Bar No.15258

**CASE NO. 08-61757 – CIV – MORENO/TORRES**
**SERVICE LIST**

Charles G. De Leo
Damon T. Hartley
Fowler White Burnett P.A.
Espirito Santo Plaza
1395 Brickell Avenue, 14th Floor
Miami, FL 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
*Attorney for the Petitioners*

STROUP & MARTIN, P.A.
119 S.E. 12th St.
Fort Lauderdale, FL 33316
Telephone: (954) 462-8808
Facsimile: (954) 462-0278

KRUPNICK, CAMPBELL, MALONE,
BURSER, SLAMA, HANCOCK
LIBERMAN & MCKEE, P.A.
Kelly D. Hancock, Esq.
Robert J. McKee, Esq.
700 S.E. Third Avenue
Courthouse Law Plaza, Suite 100
Fort Lauderdale, FL 33316
Telephone: (954) 763-8181

Francis A. Zachrel
Rachel Holladay LeBlanc
Shutts & Bowen, LLP
1500 Miami Center
201 South Discayne Blvd
Miami, FL 33131

James W. McCready
Seipp & Flick LLP
Two Alhambra Plaza
Suite 800
Miami, FL 33134

Jonathan D. Lawrence
Alvarez, Sambol, Winthrop & Madison, P.A.
SunTrust Plaza
201 Alhambra Circle, Suite 602
Coral Gables, FL 33134

Joyce C. Albert
Quintairos, Prieto, Wood & Boyer, P.A.
One East Broward Blvd.
Suite 1400
Fort Lauderdale, FL 33301

Patrick E. Novak
Horr, Novak & Skipp, P.A.
One Datran Center
9100 South Dadeland Blvd.
Suite 1104
Miami, FL 33156

Richard R. McCormack
Houck Anderson
200 S. Biscayne Blvd.
Suite 300
Miami, FL 33131

William B. Milliken
Hayden, Milliken, Boeringer & Irick, P.A.
5915 Ponce de Leon Blvd.
Suite 63
Miami, FL 33146